IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIONNE M. PAMON, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:24-CV-2061-X-BK |
| | § | |
| UNITED STATES POSTAL SERVICE, | § | |
| ET AL., | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* case has been referred to the undersigned United States magistrate judge for pretrial management. Before the Court for findings and a recommended disposition are: (1) *Defendants' Partial Motion to Dismiss*, Doc. 35; (2) *Defendant Roderick Singleton's Motion to Dismiss Claims Under Plaintiff's Corrected First Amended Complaint and Jury Demand in Accordance with Rules 12(b)(5) and 12(b)(6)*, Doc. 29; (3) *Defendant APWU's Motion to Dismiss Plaintiff's Amended Complaint*, Doc. 56; and (4) *Defendant Te'Andrea M. Campbell's Partial Motion to Dismiss*, Doc. 63. Upon review, and as detailed herein, the pending motions should be **GRANTED**.

## I. BACKGROUND

This action arises from an employment dispute between *pro se* Plaintiff Dionne M. Pamon and her employer, the United States Postal Service ("USPS"), as well as various of her co-workers and managers and the American Postal Workers Union ("APWU National"), a labor organization that represents USPS employees. In her First Amended Complaint ("Amended

Complaint") (Doc. 28),[1] the live pleading, Plaintiff names as Defendants the USPS, APWU National, and five USPS employees, sued in their official and individual capacities: Roderick Singleton ("Singleton"), Vivian N. Hall ("Hall"), Ricci L. Williams ("Williams"), Alexander J. Cleger ("Cleger"), and Te'Andrea M. Campbell ("Campbell") (sometimes collectively, the "Individual Defendants"). Doc. 28, *passim*.[2]

Plaintiff is employed as a mail processing clerk by the USPS in Dallas County, Texas. Doc. 28, ¶ 3. Defendant Singleton works for the USPS as a mail processing clerk and is also an APWU "Union Steward." Doc. 28, ¶¶ 21-23. The remaining Individual Defendants work for the USPS in various supervisory and managerial capacities. Doc. 28, ¶¶ 14, 16, 18, 20.

The gravamen of Plaintiff's lawsuit is that Singleton, in his capacity as a co-worker and local shop steward, as well as the other Individual Defendants, conspired to knowingly falsify documents regarding her requests for leave and absences from her job—Requests for or Notification of Absence-PS Forms 3791 ("3971 Forms"))—and put them in her personnel file so that she could be disciplined. Doc. 28, ¶¶ 32-116.

Plaintiff contends that in August 2023, the Individual Defendants conspired to make changes to multiple 3971 Forms pertaining to her. Doc. 28, ¶¶ 39, 59. She asserts the purpose of this conspiracy was to cause multiple fraudulent 3971 Forms to be placed in her employment

---

[1] In August 2023, Plaintiff filed her original complaint. *See Pl.'s Compl. & Demand for Jury Trial*, Doc. 1. In response, two of the defendants—APWU National and Roderick Singleton—filed motions to dismiss and, in response, Plaintiff amended her complaint twice, thereby mooting the two pending motions to dismiss the original complaint. *See Pl.'s First Am. Compl. & Jury Demand*, Doc. 25; *Pl.'s First Am. Compl. & Jury Demand—Discovery Control Plan Correction* ("Am. Compl."), Doc. 28.

[2] In addition to the Individual Defendants named in the lawsuit, Plaintiff also sues 25 unnamed defendants ("Doe Defendants"), alleging they "are similarly situated to Defendants Hall, Williams, Cleger, Campbell, and Singleton, other agents of or those acting in active concert with the USPS, and the APWU." Doc. 28, ¶ 24.

file, "so that Defendants could act upon and accelerate disciplinary actions on Plaintiff's old occurrences." Doc. 28, ¶¶ 40, 55, 61. Plaintiff contends this caused her emotional distress. Doc. 28, ¶¶ 147-48.

She further alleges that Singleton failed to help her with questions she had about specific Forms 3971 and covered up his involvement in the falsification of the forms. Doc. 28, ¶¶ 68, 70-71. She alleges she filed grievances with Singleton, but he did not pursue the grievances because she does not pay union dues. Doc. 28, ¶¶ 72-74.

Plaintiff alleges she complained to USPS management when Singleton tried to "friend" her on Facebook, believing that this act constituted a threat and intimidation and created a hostile and unsafe work environment. Doc. 28, ¶ 76. She forwarded her complaints about Singleton to the APWU National, but it did nothing to resolve them or remove him from his duties as a local shop steward. Doc. 28, ¶¶ 77-83.

With respect to Defendant Campbell, Plaintiff alleges Campbell wrote Plaintiff an incorrect letter concerning her FMLA leave. Doc. 28, ¶¶ 141-42. She alleges that had Campbell checked the USPS leave-administration system (eRMS) on the day she mailed the letter, she would have discovered that, on that same day, Plaintiff had been approved for FMLA leave retroactive to April 5, 2024, and would not have sent the letter. Doc. 28, ¶ 141 (alleging that Campbell violated the FMLA by failing to check eRMS "on May 13, 2024, when Campbell mandated a scheduled meeting for an I&I"); Doc. 28, ¶ 108 (alleging that, on May 13, 2024, her FMLA leave was approved, retroactively, for the time period of April 5, 2024, through June 25, 2024); Doc. 28, ¶ 110 (alleging that Campbell sent her a certified letter, on May 14, 2024, regarding an investigative interview scheduled for May 21, 2021).

In addition, Plaintiff alleges that in April 2024, she called and notified the USPS that she needed leave and filed for FMLA leave. Doc. 28, ¶ 119. Thereafter, she filed for unemployment benefits while she was on her FMLA leave. Doc. 28, ¶ 120. She alleges that her application for unemployment benefits to cover her absence while on FMLA leave was denied because the USPS intentionally misrepresented to the Texas Workforce Commission that she had quit. Doc. 28, ¶¶ 121-24. She alleges that "Defendants provided this false information, so Plaintiff's unemployment would get denied in retaliation against Plaintiff for taking an FMLA leave, and to pressure Plaintiff's return to work from Plaintiff's FMLA leave sooner than planned." Doc. 28, ¶ 125. She alleges that, as a result of the denial of her unemployment benefits, and with no income, she was unable to provide care to her family while on FMLA leave. Doc. 28, ¶ 126.

Plaintiff asserts claims for: (1) fraud and fraudulent misrepresentation (against the USPS and Doe Defendants); (2) negligent misrepresentation (against the USPS and Doe Defendants); (3) violations of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654 (against Campbell in her individual capacity, the USPS, and Doe Defendants); (4) intentional infliction of emotional distress (against all Defendants); and (5) negligent infliction of emotional distress (against all Defendants).

The USPS moves to dismiss all claims asserted against it and the Individual Defendants in their official capacities pursuant to FED. R. CIV. P. 12(b)(1) or, alternatively, FED. R. CIV. P. 12(b)(6), with the exception of Plaintiff's FMLA claim against it. *See* Doc. 35. Singleton moves to dismiss Plaintiff's two claims against him—for intentional infliction of emotional distress and negligent infliction of emotional distress—under FED. R. CIV. P. 12(b)(6), or, alternatively, under FED. R. CIV. P. 12(b)(5) for ineffective service of process. *See* Doc. 29. APWU National similarly moves to dismiss Plaintiff's two claims against it—for intentional infliction of

emotional distress and negligent infliction of emotional distress—under FED. R. CIV. P. 12(b)(6). *See* Doc. 56. Finally, Campbell moves to dismiss Plaintiff's individual-capacity claim against her for alleged FMLA violations under FED. R. CIV. P. 12(b)(6), asserting the Amended Complaint does not plausibly allege facts that overcome her entitlement to qualified immunity. *See* Doc. 63.

In January 2025, the United States filed its *Notice of Certification Pursuant to the Westfall Act for Substitution of the United States as a Defendant* ("Notice of Certification"), Doc. 64, substituting itself for the Individual Defendants, other than Singleton, pursuant to the Westfall Act, 28 U.S.C. § 2679.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional authority to adjudicate the claim. *Home Builders Assoc. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the "jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6)

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's

"complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Twombly*, 550 U.S. at 572. Nevertheless, a complaint should not simply contain conclusory allegations but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation and quotation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court may examine the complaint, documents attached to the complaint, documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, and matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (in resolving a Rule 12(b)(6) motion, "the court may consider . . . matters of which judicial notice may be taken.").

### III. ANALYSIS

#### A. Substitution of the United States under the Westfall Act

In January 2025, the United States filed its *Notice of Certification Pursuant to the Westfall Act for Substitution of the United States as a Defendant* ("Notice of Certification"), Doc. 64, substituting itself for the Individual Defendants, other than Singleton, pursuant to the

Westfall Act, 28 U.S.C. § 2679.  Plaintiff has filed objections to the Notice of Certification.  *See* Doc. 65.

Title 28 U.S.C. § 2679(d), also known as the Westfall Act, provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim ... shall be deemed an action or proceeding brought against the United States ..., and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(2).  Upon such certification, the action against the employee "shall proceed in the same manner as any action against the United States [under the FTCA] ... and shall be subject to the limitations and exceptions applicable to those actions."  28 U.S.C. § 2679(d)(4).

Here, the government has provided a certification—signed by the Civil Chief for the Office of the United States Attorney for the Northern District of Texas[3]—stating that Hall, Williams, Cleger, and Campbell "were acting within the scope of their employment at the time period relevant to this suit."  Doc. 64, ¶ 4.

In the Fifth Circuit, the Attorney General's (or his designee's) certification is "prima facie evidence that the employee's challenged conduct was within the scope of employment." *Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995).  "Therefore, the burden of altering the status quo is on the plaintiff, who must come forward with specific facts rebutting the government's scope-of-employment certification." *Id.* (internal quotations omitted); *Malek v. United States*, 634 F. Supp. 3d 326, 334 (W.D. Tex. 2022) ("In the Fifth Circuit, a plaintiff who challenges the United States' certification has the burden of proving, by a preponderance of the

---

[3] The Attorney General has delegated his "authority to certify ... to the United States Attorney for each district, who has further delegated the authority to the Civil Chief for the United States Attorney's Office."  Doc. 64, Notice, 2-3; *see* 28 C.F.R. § 15.4(a).

evidence, that the employee's conduct was not within the scope of their employment."), *aff'd*, No. 22-51050, 2024 WL 3534483 (5th Cir. July 25, 2024).

To rebut the United States's scope-of-employment certification, the plaintiff must allege "in either the complaint or subsequent filing, *specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment*." *Aguayo v. United States*, No. 3:23-CV-00539-E, 2024 WL 202106, at *2 (N.D. Tex. Jan. 18, 2024) (emphasis in original). And those facts must be in the form of "competent evidence." *Malek*, 634 F. Supp. 3d at 334.

Upon review of Plaintiff's objections to the Notice of Certification, *see* Doc. 65, the undersigned finds that she has not offered any facts, let alone competent evidence, showing that Individual Defendants Hall, Williams, Cleger, and Campbell acted outside the scope of their employment at the time of the alleged misconduct giving rise to her claims for infliction of emotional distress. In addition, in her Amended Complaint, Plaintiff alleges and judicially admits that "Defendants acted in the course and scope of his or her employment" when they allegedly caused her emotional distress. *See* Doc. 28, ¶¶ 148, 153.

Further, Plaintiff's objections based on the FMLA and alleged criminal conduct are misplaced, as the United States's substitution is expressly limited to Plaintiff's fourth and fifth causes of action (for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively). *See* Doc. 64 at 1.

Accordingly, Plaintiff's objections to the Notice of Certification should be overruled and the Government should be substituted as the defendant for Plaintiff's fourth and fifth causes of action (for intentional infliction of emotional distress and negligent infliction of emotional

distress, respectively), as against Individual Defendants Hall, Williams, Cleger, and Campbell.[4]

### B. Defendants' Partial Motion to Dismiss, Doc. 35

Plaintiff has alleged all five of her claims as against the USPS and the Doe Defendants. Doc. 28 at 21-28. The USPS asserts that "[t]he only viable claim the complaint asserts is a claim for alleged violation of the FMLA, and the only proper defendant in such a suit is the U.S. Postal Service." Doc. 35 at 7. The USPS, on behalf of itself and the Individual Defendants as sued in their official capacities, moves to dismiss Plaintiff's first two claims (for fraud, fraudulent misrepresentation, and negligent misrepresentation) as "barred by sovereign immunity"; her fourth claim for intentional infliction of emotional distress for lack of jurisdiction and, alternatively, for failure to state a claim; and her fifth claim (for negligent infliction of emotional distress) for failure to state a claim. *See* Doc. 35 at 11-19.

1. Plaintiff's claims for fraud, fraudulent misrepresentation, and negligent misrepresentation should be dismissed for lack of jurisdiction, as the claims are barred by sovereign immunity.

The first two counts of the Amended Complaint assert claims for (1) fraud/intentional misrepresentation, and (2) fraud/negligent misrepresentation. Doc. 28 at 21, 23. Plaintiff alleges that the USPS misrepresented to the Texas Workforce Commission that she had quit, which prompted the Texas Workforce Commission to deny her claim for unemployment benefits. *See* Doc. 28, ¶¶ 122, 125, 134-35.

In support of its motion to dismiss, the USPS contends the Court lacks jurisdiction over these claims because they are "barred by sovereign immunity." Doc. 35 at 11. Under the

---

[4] For the reasons stated below in the Court's analysis of the USPS's motion to dismiss, *see infra* Sec. III.B.2, the conduct of which Plaintiff complains falls outside the FTCA's waiver of sovereign immunity. Thus, as against the United States, Plaintiff's claim for intentional infliction of emotional distress (Count 4) should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Further, as set forth below, *see infra* Sec. III.B.3, under Texas law there is no such claims as "negligent infliction of emotional distress." Thus, as against the United States, Plaintiff's claim for negligent infliction of emotional distress should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

doctrine of sovereign immunity, the United States government cannot be sued unless it gives its consent. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). "Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (cleaned up). As "an independent establishment of the executive branch of the Government of the United States . . . , the Postal Service enjoys federal sovereign immunity absent a waiver." *Dolan v. USPS*, 546 U.S. 481, 483-84 (2006) (cleaned up).

Here, Plaintiff's only possible vehicle for bringing a fraud or misrepresentation claim against the USPS would be to assert it against the United States under the Federal Tort Claims Act (FTCA). 28 U.S.C. § 2679(b)(1). This is because "a suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or employees." *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (citing 28 U.S.C. § 2679(a)); *accord Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) ("The [FTCA] is the exclusive remedy for suits against the United States or its agencies sounding in tort.")

Notably, while the FTCA generally waives sovereign immunity, it has an exception for "[a]ny claim arising out of . . . misrepresentation [or] deceit." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1031 (5th Cir. 2011) (cleaned up) (quoting 28 U.S.C. § 2680(h)). "That exception bars claims for both negligent and intentional misrepresentation." *Id.* (citing *Block v. Neal*, 460 U.S. 289, 295-96 (1983)); *see also e.g., Atorie Air, Inc. v. F.A.A.*, 942 F.2d 954, 957-58 (5th Cir. 1991) (affirming dismissal of claim against FAA based on FAA's purported misrepresentations because the FTCA reserves the United States' immunity "for claims of misrepresentation").

Here, Plaintiff's claims against the USPS are for fraud, intentional misrepresentation and negligent misrepresentation. *See* Doc. 28 at 21, 23. As such, the USPS has sovereign immunity with respect to these claims.

Plaintiff seeks to overcome the USPS's sovereign immunity by arguing that jurisdiction exists under 28 U.S.C. § 1331 (federal question); various criminal statutes; ethics regulations; and 39 U.S.C § 409(e)(1)(A), a statute that authorizes certain suits against the U.S. Postal Service. *See* Doc. 43, *passim*. Upon consideration, the Court rejects her attempt to overcome the USPS's sovereign immunity.

First, with respect to Plaintiff's contention that jurisdiction exists under 28 U.S.C. § 1331, *see* Doc. 43 at 2, the Fifth Circuit has held that Section 1331 does not provide jurisdiction over the United States because it "does not provide a general waiver of sovereign immunity." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994). Accordingly, this argument lacks merit.

Second, the Court rejects Plaintiff's assertion that jurisdiction exists under four federal criminal statutes, *see* Doc. 43 at 2-3. As the USPS correctly notes, "none of the federal criminal statutes she cites either waives sovereign immunity or creates a cause of action for any of the claims that she is asserting—i.e., for fraud, misrepresentation, negligent infliction of emotional distress, or intentional infliction of emotional distress." Doc. 49 at 2-3. And, even if they did, "[i]t has long been held that there is no general right to bring a private action under federal criminal statutes[,]" let alone a private action against the United States. *See Rhodes v. McCall-N Ltd.*, No. 4:21-CV-04221, 2022 WL 3349229, at *4 (S.D. Tex. July 27, 2022) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)), *adopted by* 2022 WL 3349222 (S.D. Tex. Aug. 11, 2022), *appeal dismissed*, 2023 WL 3737822 (5th Cir. Jan. 11,

2023).

Third, Plaintiff's reliance on Government ethics regulations fails. She points to the Standards of Ethical Conduct for Employees of the Executive Branch, which are part of federal regulations. Specifically, she cites this regulation: "Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities." Doc. 43 at 5 (citing 5 C.F.R. § 2635.101(b)(11)). But she overlooks the provision that bars suits by private individuals for alleged violations of the Standards:

> A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person.

5 C.F.R. § 2635.106(c). In that provision, the United States does not waive its immunity from suit; instead, it expressly preserves it. "Therefore, there does not appear to be a stand[-] alone cause of action for a violation of the regulation." *Lone Star Coll. Sys. v. E.E.O.C.*, No. CIV.A. H-14-529, 2015 WL 1120272, at *7 (S.D. Tex. Mar. 12, 2015) (citation omitted); *see also Allstate Life Ins. Co. v. Estate of Reed*, No. 1:05–CV–164–LG, 2007 WL 1040507, at *5 (S.D. Miss. Mar. 30, 2007) (the Standards of Ethical Conduct of Employees of the Executive Branch "do not create a private right of action, such that [plaintiff] is not entitled to any relief pursuant to these regulations.") (citation omitted).

Finally, Plaintiff mistakenly asserts that jurisdiction exists under 39 U.S.C § 409(e)(1)(A). Doc. 43 at 8. However, as the USPS correctly notes, "[t]hat statute has no relevance to this suit because [Plaintiff] is not asserting a claim for alleged violation of federal law by the USPS in connection with a product offered by the USPS outside its postal monopoly," Doc. 49 at 4, which is the only civil action authorized under that statute.

For these reasons, the Court finds that the USPS has sovereign immunity from Plaintiff's claims of fraud and misrepresentation as asserted in the first two claims of her Amended Complaint. Thus, *Defendants' Partial Motion to Dismiss* as to these claims should be **GRANTED**, and these claims should be **DISMISSED** for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

    2. Plaintiff's fourth claim (for intentional infliction of emotional distress) should be dismissed for lack of jurisdiction.

The USPS, on its behalf and on behalf of the Individual Defendants in their official capacities, contends that Plaintiff's claim for intentional infliction of emotional distress should be dismissed for lack of jurisdiction. Doc. 35 at 13. More specifically, the USPS maintains that the conduct of which Plaintiff complains "falls outside the FTCA's waiver of sovereign immunity." Doc. 35 at 13. The Court agrees.

A plaintiff cannot assert a claim under the FTCA based on conduct that falls outside the FTCA's limited waiver of sovereign immunity. *Truman v. United States*, 26 F.3d 592, 594-95 (5th Cir. 1994); *Grost v. United States*, 648 F. App'x 459, 461 n.1 (5th Cir. 2016). As previously explained, the FTCA contains a provision—28 U.S.C. § 2680(h)—that preserves the United States's sovereign immunity from certain claims. A plaintiff cannot circumvent that provision through creative pleading because, as the Fifth Circuit has explained, what matters is "the conduct upon which the plaintiff's claim is based":

> [W]e focus on the conduct upon which the plaintiff's claim is based. If the conduct upon which a claim is based constitutes a claim "arising out of" any one of the torts listed in section 2680(h), then the federal courts have no jurisdiction to hear that claim. Even if a plaintiff styles a claim so that it is not one that is enumerated in section 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action."

*Truman*, 26 F.3d at 594 (internal quotations omitted).

13

Here, as the USPS correctly notes, "the basis of [Plaintiff's] intentional-infliction-of-emotional-distress claim is an alleged misrepresentation; namely, the alleged misrepresentation that the U.S. Postal Service supposedly made to the Texas Workforce Commission (i.e., that she had quit)." Doc. 35 at 14. As the above-cited cases hold, however, Plaintiff cannot circumvent the FTCA's exceptions by relabeling her "misrepresentation" claim against the USPS as a claim for "intentional infliction of emotional distress." A claim based on alleged misrepresentations is barred by sovereign immunity, no matter what the plaintiff may style the claim.

For these reasons, because the conduct of which Plaintiff complains falls outside the FTCA's waiver of sovereign immunity, *Defendants' Partial Motion to Dismiss* should be **GRANTED**, and Plaintiff's claim for intentional infliction of emotional should be **DISMISSED** for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

In the alternative, the Court should find, as argued by the USPS, that even if Plaintiff could successfully evade the FTCA's exclusions, she still could not assert any claim under the Act "because her complaint does not, and cannot, allege that she satisfied the Act's jurisdictional prerequisites." Doc. 35 at 14.

Plaintiffs seeking recovery under the FTCA must first present their claim to the appropriate federal agency and the claim must have been "finally denied by the agency" before suit may be brought in federal court. 28 U.S.C. § 2675(a). The exhaustion requirement "is jurisdictional and cannot be waived." *Baker v. McHugh*, 672 F. App'x 357, 362 (5th Cir. 2016) (citation omitted). Thus, to state a claim for intentional infliction against a government agency, the complaint must allege that the plaintiff has "complied with this jurisdictional requirement." *Id.* If a complaint fails to do so, it should be dismissed for lack of jurisdiction. *Id.*

The Amended Complaint does not allege that Plaintiff has satisfied the FTCA's

14

jurisdictional prerequisites by presenting her intentional-infliction-of-emotional-distress claim to the USPS, and there is nothing in the record to indicate that she has done so. Therefore, even if the FTCA did authorize such a claim, this Court would lack jurisdiction to hear the claim.

Accordingly, in the alternative to granting *Defendants' Partial Motion to Dismiss* because the conduct of which Plaintiff complains falls outside the FTCA's waiver of sovereign immunity, the motion should be **DISMISSED** for lack of jurisdiction under Rule 12(b)(1) for failure to satisfy the FTCA's jurisdictional prerequisites.

3. Plaintiff's fifth claim (for negligent infliction of emotional distress) should be dismissed for failure to state a claim.

The USPS contends that Plaintiff's claims for negligent infliction of emotional distress against it and the Individual Defendants in their official capacities[5] should be dismissed for failure to state a claim because Texas does not recognize a cause of action for negligent infliction of emotional distress. Doc. 35 at 19. Defendants are correct.

Under Texas law, there is no cause of action for "negligent infliction of emotional distress." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 224 (5th Cir. 2013) ("Barker cannot recover for negligent infliction of emotional distress because Texas does not recognize a cause of action under this theory."); *Cornhill Ins. v. Valsamis, Inc.*, 106 F.3d 80, 87 (5th Cir. 1997) ("In 1993, the Texas Supreme Court eliminated negligent infliction of emotional distress as a cause of action."); *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) ("[T]here is no general duty in Texas not to negligently inflict emotional distress.").

---

[5] As USPS correctly notes, a suit against a federal official in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, an official-capacity suit is "to be treated as a suit against the entity," *id.*, and likewise fails against the individual in his official capacity when it fails against the United States or one of its agencies.

For these reasons, *Defendants' Partial Motion to Dismiss* should be **GRANTED** as to Plaintiff's claim for negligent infliction of emotional distress for failure to state a claim under Rule 12(b)(6), and these claims should be dismissed as to the USPS and the Individual Defendants in their official capacities.

### C. Defendant Roderick Singleton's Motion to Dismiss Claims Under Plaintiff's Corrected First Amended Complaint and Jury Demand in Accordance with Rules 12(b)(5) and 12(b)(6).

In the Amended Complaint, Plaintiff asserts claims against Singleton for intentional infliction of emotional distress and negligent infliction of emotional distress. Doc. 28 at 26-29. Singleton separately argues that Plaintiff has failed to state a claim as to each under Federal Rule of Civil Procedure 12(b)(6). Doc. 30 at 7-16. Singleton's arguments have merit.

A plaintiff cannot bring an intentional-infliction-of-emotional-distress claim based on the same conduct that she alleges in support of other claims against the defendant. *See Stelly v. Duriso*, 982 F.3d 403, 408 (5th Cir. 2020). That is because the intentional infliction of emotional distress is a "gap-filler" tort, to-wit, a "judicially created [cause of action] for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *see also Stelly*, 982 F.3d at 408; *Ameen v. Merck Co.*, 226 F. App'x 363, 372-73 (5th Cir. 2007) (holding that an employee could not bring an intentional-infliction-of-emotional-distress claim because it was based on the same "conduct underlying her retaliation claim").

Here, Plaintiff relies on the same facts to support her intentional-infliction-of-emotional-distress claim as she does to support her other claims. The Amended Complaint expressly "repeats and realleges" all the preceding paragraphs in support of her intentional-infliction-of-

emotional-distress claim. Doc. 28, ¶ 147 ("Plaintiff repeats and realleges the above paragraphs as if fully set forth herein."). By relying on the same facts to support her intentional-infliction-of-emotional-distress claim, Plaintiff tacitly admits there is no "gap" to fill. And for that reason, Plaintiff's intentional-infliction-of-emotional-distress claim is not permitted under Texas law.

With regard to her claims for negligent infliction of emotional distress, as explained *supra*, "Texas does not recognize a cause of action under this theory." *Barker*, 713 F.3d at 224 (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)); *Boyles*, 855 S.W.2d at 594. Thus, Singleton's motion to dismiss should be **GRANTED IN PART**, and Plaintiff's intentional and negligent infliction of emotional distress claims should be **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[6]

### D. Defendant APWU's Motion to Dismiss Plaintiff's Amended Complaint, Doc. 56

In the Amended Complaint, Plaintiff asserts claims against APWU National for intentional infliction of emotional distress and negligent infliction of emotional distress. Doc. 28 at 26-29. Defendant APWU National moves to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state legally cognizable claims. Doc. 57 at 5-9. Upon review, both claims fail as a matter of law.

1. Plaintiff's fourth claim (for intentional infliction of emotional distress) should be dismissed for failure to state a claim.

First, APWU National correctly argues that on the alleged facts, it cannot be held liable for Singleton's purported actions as a local shop steward employed by the U.S. Postal Service as

---

[6] Although Singleton initially also sought dismissal under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, Doc. 29 at 2, in her response brief, Plaintiff asserts that "[t]o rectify this error," she has re-served all parties using the correct method. *See* Doc. 31 at 2. At this juncture, the Court has no information to the contrary. In any event, the Court need not resolve this issue as dismissal is clearly warranted under Rule 12(b)(6), as outlined *supra*.

a mail processing clerk.  *See* Doc. 57 at 5-7.

International and national unions are not liable for a local union's actions unless they ratify the local's misconduct.  *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 217 (1979) (no international liability where there is no evidence the international "instigated, supported, ratified or encouraged" local union's actions); *see also Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 6666831, at *9 (E.D. Tex. June 17, 2016) ("The general rule is that acts of a local union and its agents may not be imputed to an international union and mere affiliation does not establish vicarious parent body liability.") (citation omitted), *adopted by* 2016 WL 3621120 (E.D. Tex. July 6, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019).

Plaintiff does not allege that Singleton is an APWU National employee or officer.  See Doc. 28, *passim*.  She identifies him only as an "APWU representative," and the context of her Amended Complaint makes clear that he was a local union shop steward.  Doc. 28, ¶¶ 21-23. She further alleges that he worked as a "Mail Processing Clerk" in the same U.S. Postal Service facility as she did, and was the person she approached to file her grievances.  *See* Doc. 28, ¶¶ 21-23, 72-74.

Importantly, Plaintiff has not alleged any fact that, if true, demonstrates the APWU National ratified, supported, or encouraged Singleton's alleged conduct, even if it was wrongful. In addition, insofar as Plaintiff is attempting to allege that APWU National's failure to act on her complaints concerning Singleton constitutes ratification of his alleged actions, she is mistaken. In *Carbon Fuel Co.*, the Supreme Court held that an international union cannot be held liable simply because it failed to intervene and stop the unlawful acts of a local, even when it has knowledge of the local's conduct.  *Carbon Fuel Co.*, 444 U.S at 218.  There must be evidence

that the international union supported, instigated, ratified, or encouraged the misconduct.  *Id.* at 217-18; *see also Serna v. Am. Postal Workers Union, AFL-CIO*, No. SA17CA1231OLGHJB, 2018 WL 4701833, at *4 (W.D. Tex. July 10, 2018), *adopted sub nom. Serna v. Nat'l Am. Postal Workers Union, AFL-CIO by* 2018 WL 4688782 (W.D. Tex. Aug. 29, 2018) (granting APWU National's motion to dismiss where the plaintiff did not allege APWU National assumed the role of the local union in its dealings with the plaintiff, or that it ratified any action of the local union).

Here, even liberally construed, the Amended Complaint only alleges that the APWU National failed to act on her complaints about Singleton.  *See* Doc. 28, ¶¶ 77-83.  It does not allege facts sufficient to state a plausible claim that the APWU National ratified, supported, or encouraged his acts.  Consequently, Plaintiff cannot allege a plausible claim against the APWU National based on Singleton's alleged acts.

Alternatively, the Court also finds persuasive APWU National's argument that the Amended Complaint does not allege "extreme and outrageous conduct that supports a plausible claim for intentional infliction of emotional distress."  Doc. 57 at 8.   To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche*, 144 S.W.3d at 445 (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)).  Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up) (citation omitted).

19

Again, here, the Amended Complaint alleges only that the APWU National did not act on Plaintiff's complaints against Singleton. *See* Doc. 28, ¶¶ 77-83. This allegation of misconduct by APWU National does not remotely rise to the level of intentional or reckless conduct that was "extreme and outrageous," or which caused Plaintiff severe emotional distress. *See id.*

Thus, for the foregoing reasons, *APWU's Motion to Dismiss Plaintiff's Amended Complaint* should be **GRANTED**, and Plaintiff's claim for intentional infliction of emotional distress should be **DISMISSED** under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legal claim.

2. Plaintiff's fifth claim (for negligent infliction of emotional distress) should be dismissed for failure to state a claim.

As previously explained in detail *supra*, under Texas law, there is no such claim as "negligent infliction of emotional distress." As such, *APWU's Motion to Dismiss Plaintiff's Amended Complaint* should be **GRANTED**, and Plaintiff's claim for negligent infliction of emotional distress should be **DISMISSED** under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legal claim.

**E. Defendant Te'Andrea M. Campbell's Partial Motion to Dismiss**, Doc. 63.

Plaintiff brings a claim for FMLA interference and retaliation against Campbell, Supervisor of Distribution Operations, in her individual capacity. Doc. 28, ¶ 5.

Campbell, as sued in her individual capacity, moves to dismiss Plaintiff's FMLA claim pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that she is entitled to qualified immunity from Plaintiff's FMLA claim because Plaintiff has not established a violation of her rights, let alone demonstrated that her actions were objectively unreasonable in light of clearly established law at the time. Doc. 63 at 8-11. In response, Plaintiff argues that her FMLA claim against Campbell survives qualified immunity and that Campbell engaged in criminal conduct

that circumvents the qualified immunity defense.  Doc. 67 at 2-5, 7-8.

A plaintiff may assert an FMLA claim against an individual defendant.  *See Modica v. Taylor*, 465 F.3d 174, 188 (5th Cir. 2006) (joining other courts "that hold that public employees are subject to individual liability under the FMLA").  As a government official, however, Campbell is entitled to the protection of qualified immunity for discretionary acts unless Plaintiff pleads specific facts that, if true, state a claim for violation of clearly established constitutional or statutory law.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). When a government official raises the defense of qualified immunity in a motion to dismiss, the court must rule on the motion before permitting discovery.  *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022); *see also Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("Qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'")); *see, e.g.*, *Turner v. Lieutenant Driver*, 848 F.3d 678, 683 (5th Cir. 2017) (addressing a qualified immunity defense raised in a motion to dismiss).

The qualified immunity analysis has two prongs, which may be analyzed in either order. *Pearson*, 555 U.S. at 236.  Under the first prong, a court determines whether the Plaintiff has alleged a violation of a federal constitutional or statutory right.  *Ramirez*, 3 F.4th at 133.  Under the second prong, a court determines whether the federal constitutional or statutory right was clearly established at the time of defendant's conduct.  *Id.*  While this determination "does not require a case directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S.

73, 79 (2017) (cleaned up) (citation omitted).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a government official asserts a qualified immunity defense, the burden is on the plaintiff to "show that he pleaded facts showing ... that the official violated a statutory or constitutional right.  If the plaintiff makes this ... showing, then [the court] determine[s] whether the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *United States ex rel Parikh v. Brown*, 587 F. App'x 123, 127-28 (5th Cir. 2014) (internal quotation marks, citations, and alteration omitted).

As summarized *supra*, Plaintiff alleges Campbell wrote Plaintiff an incorrect letter concerning her FMLA leave.  Doc. 28, ¶¶ 141-42.  She alleges that had Campbell checked the USPS leave-administration system (eRMS) on the day she mailed the letter, she would have discovered that, on that same day, Plaintiff had been approved for FMLA leave retroactive to April 5, 2024, and would not have sent the letter.  Doc. 28, ¶ 141 (alleging that Campbell violated the FMLA by failing to check eRMS "on May 13, 2024, when Campbell mandated a scheduled meeting for an I&I"); Doc. 28, ¶ 108 (alleging that, on May 13, 2024, her FMLA leave was approved, retroactively, for the time period of April 5, 2024, through June 25, 2024); Doc. 28, ¶ 110 (alleging that Campbell sent her a certified letter, on May 14, 2024, regarding an investigative interview scheduled for May 21, 2021).

The FMLA protects employees "from retaliation or discrimination for exercising their rights under the FMLA."  *Murillo v. City of Granbury*, No. 22-11163, 2023 WL 6393191, at *3 (5th Cir. Oct. 2, 2023) (citing *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 580

(5th Cir. 2006)).  The FMLA's interference clause "prohibits employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under' the [A]ct."  *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (alterations in original) (quoting 29 U.S.C. § 2615(a)(1)).  Additionally, under the FMLA's retaliation clause, employers may not discriminate or retaliate against an employee for exercising her rights under the Act.  *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (citing 29 U.S.C. § 2615(a)(2)).

Campbell argues that Plaintiff cannot overcome her qualified immunity defense because it has never been "clearly established law" that an employee on FMLA leave has a right "to be free from receiving a letter concerning her attendance."  Doc. 63 at 8.  The Court agrees.  Indeed, the Fifth Circuit has held that a state employee did *not* have a clearly established right to be free from occasional contact about work matters while on FMLA leave, and therefore, the supervisor at the state agency who occasionally called the employee while she was on FMLA leave was granted qualified immunity from the employee's FMLA interference claim based on the calls.  See *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 771-72 (5th Cir. 2015).  In *Bryant*, the court held:

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. Bryant has not cited to a single judicial opinion holding that employees on FMLA leave have a right to be free from phone calls. Thus, Littleton [her supervisor] is entitled to qualified immunity on Bryant's remaining interference claim.

*Id.*

Similarly, here, Plaintiff has failed to cite a single opinion to support that an employee on FMLA leave has a right to be free from contact (by letter or otherwise) from the employer during her FMLA leave.  Nor has the Court found any legal support for this position.

23

Further, the court's holding in *Bryant* is also consistent with the general rule that "[d]e minimis contact between an employer and employee on FMLA leave does not amount to interference." *Lopez v. TexasChristian Univ.*, No. 4:22-CV-00171-O, 2022 WL 3227854, at *2 (N.D. Tex. Aug. 10, 2022) (citing *Ray v. Compass Bank*, No. 3:06-cv-1153, 2007 WL 9711686, at *5 (N.D. Tex. May 24, 2007), *aff'd*, 256 F. App'x 709 (5th Cir. Dec. 5, 2007)); *see also Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 632 (6th Cir. 2018) (holding that a single instance of contact—concerning the employee's time off—is a "de minimis request [that] does not rise to the level of actionable interference").

Further, the Court has considered Plaintiff's response and finds her arguments lack merit. First, Plaintiff argues that the FMLA itself establishes a foundational law that Campbell violated. Doc. 67 at 5. But "qualified immunity applies to FMLA claims." *Stramaski v. Lawley*, 44 F.4th 318, 327 (5th Cir. 2022); *see also Bryant*, 781 F.3d at 770-71 (applying qualified immunity to FMLA interference claim). Thus, the hypothetical violation of the FMLA alone is insufficient to establish that Campbell's *specific* alleged conduct violated a clearly established right. *Id.* Plaintiff's only concrete allegation against Campbell is that she wrote Plaintiff an incorrect letter concerning her leave, but Plaintiff concedes that she herself cannot "remember if [she] had a [sic] called in to report FMLA leave for that time period." Doc. 28 at 18.

Second, Plaintiff argues that she has raised criminal fraud claims against Campbell that circumvent qualified immunity. Doc. 67 at 3-8. Specifically, Plaintiff relies on the following federal criminal statutes in her complaint: 18 U.S.C. § 371, 18 U.S.C. § 1001, and 18 U.S.C. § 2. Doc. 67 at 7-8. But none of these criminal statutes gives rise to private causes of action. *See, e.g.*, *Khullar v. Goldstein*, No. 0:24-CV-62170, 2025 WL 984623, at *3 (S.D. Fla. Feb. 26, 2025) (rejecting claims under 18 U.S.C. § 371) (collecting cases); *Shumaker v. Guzman*, No. 7:21-CV-

24

477, 2022 WL 2902843, at *8 (S.D. Tex. Apr. 4, 2022) ( "[T]here is no private right of action

with respect to 18 U.S.C. §[] 1001."); *Prall v. Hartford Prosecutors*, No. 3:09-CV-1047, 2011

WL 4352014, at *4 (D. Conn. Sept. 16, 2011) (dismissing claims for violations of 18 U.S.C. §

2).  And, while Plaintiff also cites 18 U.S.C. § 1030, which does create a private right of action,

it only applies if the alleged fraudster "obtains anything of value," such as a physical object or

access to a bank account.  18 U.S.C. § 1030(a)(4).  Plaintiff has not alleged that Campbell, or any

of the Defendants, acquired anything of value from Plaintiff via their alleged fraud.

        In sum, Campbell is entitled to qualified immunity from the FMLA retaliation claim

against her in her individual capacity because Plaintiff does not plausibly allege that Campbell

violated a "clearly established" statutory right by sending her a single letter while she was on

FMLA leave.  Alternatively, Plaintiff has failed to plausibly allege that Campbell's actions were

"objectively unreasonable," especially in light of cases holding that de minimis contact is

permitted.  "The unlawfulness of the defendant's actions must have been readily apparent from

sufficiently similar situations . . . . In essence, a plaintiff must allege facts sufficient to

demonstrate that no reasonable officer could have believed his actions were proper." *Brown v.*

*Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  That is simply not the case here.  Moreover, as

Campbell contends, that "the complaint does not plausibly allege facts showing that it was

objectively unreasonable for [her] to have mailed [Plaintiff] the letter about her attendance while

she was on FMLA leave."[7]  Doc. 63 at 10.

_____

[7] In the Amended Complaint, Plaintiff acknowledges that there may have been some legitimate
confusion about the reason for her absence, as she cannot recall whether she called in to request
FMLA leave for the time period at issue (May 5-9, 2024).  *See* Doc. 28, ¶101 ("On or around
May 5, 2024[,] through to May 9, 2024, Plaintiff couldn't remember if Plaintiff had called in to
report FMLA leave for that time period."); Doc. 28, ¶ 116 (alleging that the investigative
interview concerned her absences for "May 5, 2024 through to May 9, 2024").  In addition,

Because the Amended Complaint does not plausibly allege facts that overcome Campbell's entitlement to qualified immunity, *Campbell's Partial Motion to Dismiss*, Doc. 63, should be **GRANTED**, and Plaintiff's FMLA claim against Campbell in her individual capacity should be **DISMISSED**.

## IV. LEAVE TO AMEND

Generally "a *pro se* litigant should be offered an opportunity to amend h[er] complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted). Rule 15(a) provides that leave to amend shall be "freely" given "when justice so requires." FED. R. CIV. P. 15(a). "[T]he language of this rule 'evinces a bias in favor of granting leave to amend.'" *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). Granting leave to amend, however, is not required if the plaintiff has already pleaded her "best case." *Brewster*, 587 F.3d at 768 (citation omitted). A plaintiff is deemed to have pleaded her best case when, as here, she amends after she is "apprised of the insufficiency" of her complaint. *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008). Similarly, a district court need not grant a futile motion to amend. *Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

As to all claims where dismissal is appropriate for lack of subject matter jurisdiction,

---

Plaintiff had a history of absenteeism, pre-dating her request for FMLA leave. Doc. 28, ¶ 32 (absent from July 25 to 27, 2023); Doc. 28, ¶¶ 42, 44 (multiple absences from April 22, 2023, to July 27, 2023). Under this scenario, sending a letter would not be unreasonable.

granting leave to amend obviously would be futile and cause needless delay.[8]  As to those remaining claims where substantive pleading deficiencies provide the basis for dismissal, the Court notes that, as set out in detail *supra*, it is unlikely that the facts Plaintiff has repeatedly alleged in this lawsuit can support any legally cognizable claims.  Thus, leave to amend those claims would likewise be futile and cause needless delay.[9]

## V. RECOMMENDATION

Based on all of the foregoing, *Defendants' Partial Motion to Dismiss*, Doc. 35; *Defendant Roderick Singleton's Motion to Dismiss Claims Under Plaintiff's Corrected First Amended Complaint and Jury Demand in Accordance with Rules 12(b)(5) and 12(b)(6)*, Doc. 29; *Defendant APWU's Motion to Dismiss Plaintiff's Amended Complaint*, Doc. 56; and *Defendant Te'Andrea M. Campbell's Partial Motion to Dismiss*, Doc. 63, should each be **GRANTED**. Accordingly, all of Plaintiff's claims against the USPS and the named Individual Defendants dismissed for lack of subject matter jurisdiction should be **DISMISSED WITHOUT PREJUDICE**, while the remaining claims should be **DISMISSED WITH PREJUDICE**.

---

[8] Although the Court concludes that amendment would be futile as to those claims dismissed for lack of subject matter jurisdiction, the 14-day objection period will permit Plaintiff to offer facts/allegations, if any, that can cure the deficiencies in those claims as outlined herein, including the opportunity to establish the USPS's waiver of its sovereign immunity as to Plaintiff's claims.

[9] Despite the Court's findings regarding the futility of granting leave to amend, the 14-day objection period attendant to this Recommendation will permit Plaintiff the opportunity to assert any facts and/or claims that can cure the deficiencies outlined here.

If this recommendation is accepted by the presiding district judge, only Plaintiff's FMLA claim against the USPS will remain pending.

**SO RECOMMENDED** on August 6, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).